IN THE

# Supreme Court of Georgia,

## AT ATLANTA.

### SEPTEMBER TERM, 1881.

PRESENT—JAMES JACKSON, . . . . . CHIEF JUSTICE.
         MARTIN J. CRAWFORD, . . ASSOCIATE "
         ALEXANDER M. SPEER, . .     "     "

### GORDON *vs.* MITCHELL.

(On motion to dismiss.)

1. Agreed copies of certain court papers were used in evidence on the trial of a case, and on the motion for new trial were attached to the brief of evidence, with the agreement that they be used on the motion for new trial, and if the case should be carried to the supreme court that they should be copied in the record as part thereof, in all respects as though they had been copied out into the brief of evidence, and the brief so formed was examined, approved and filed in office. On exception to the overruling of the motion for new trial the bill of exceptions recited that "a brief of the testimony introduced on the trial has been filed under the revision and approval of the court, and is a part of the record of the cause, identified by the signature of the judge appended to the agreement of counsel to said brief of evidence:"

*Held,* that the brief of evidence was fully authenticated, and the case will not be dismissed.

2. That the agreement of counsel to a brief of evidence recites that it consists of a certain number of pages, and when the same is copied by the clerk, it covers in the record more than that number of pages, is no cause for dismissal.

(On the merits.)

v 68—2

1. That a vendor had no personal knowledge of the items of account on which he sued at the time when they were made, was no ground for the exclusion of his testimony, where it appeared that after the goods were furnished he and the defendant went over the account together and agreed to its correctness.

2. The verdict is upheld by the evidence.

3. A contract to sublet, sublease or hire out convicts leased from the state, is illegal.

(*a*.) A contract for one as an agent of a lessee of convicts to work them according to law on the place of the lessee would be legal, but for a lessee to turn over convicts to another to be carried away and worked by him for his own use at another place, would be illegal.

(*b*.) If upon the dissolution of a firm one partner, who was a lessee of convicts, put certain of them in charge of the other partner, by whom a contract was made with a creditor of the firm to let him have the labor of such convicts for eight years in payment of the firm debt, and the partner. who was a lessee shortly thereafter resumed control and took the convicts from the creditor, such facts would not constitute accord and satisfaction of the firm debt.

4. Requests to charge not based on the testimony were properly refused.

5. The judge of the superior court may grant a new trial on terms; or may propose terms, and on their refusal in advance by counsel, may refuse a new trial. Such practice will not work a reversal of his judgment.

Practice in Supreme Court    Evidence. Verdict. Contracts. Charge of Court. New Trial. Practice in Superior Court. Before Judge HILLYER. Dekalb Superior Court. March Term, 1881.

Reported in the decision.

VAN EPPS & CALHOUN, for plaintiff in error.

CANDLER & THOMSON, for defendant.

JACKSON, Chief Justice.

(On motion to dismiss writ of error.)

A motion was made to dismiss this case on the ground that the evidence in the record—particularly the documentary part thereof, is not authenticated in the bill of

exceptions and record, so as to show that it is that which the superior court had before it on the trial before the jury and on the motion for a new trial.

The bill of exceptions recites that "a brief of the testimony introduced on the trial has been filed under the revision and approval of the court, and is a part of the record of the cause identified by the signature of the judge appended to the agreement of counsel to said brief of evidence."

In the record is the following agreement:

"It is hereby agreed that the above and foregoing one hundred and eleven pages, including the charge of the court, contains a true copy of all the documentary and a brief of all the oral evidence adduced on the trial of the above stated case, and it is further agreed that the agreed copy of the bill, exhibits, and order and other writings hereto attached, used on the trial of this case may be used on the hearing of this motion for new trial, and that the same in the event that this case is carried to the supreme court by either party, may be copied into the record by the clerk and become a part of the record in this case, in all respects as if the same had been copied in the above agreed and approved brief of evidence. This the fourth day of April, 188—."

This was agreed to by counsel, and examined, and approved, and ordered filed by the judge on the 4th of April, 1881, and on that day filed in office by the clerk.

So that in the bill of exceptions, which the judge certifies to be true, it is alleged that the brief of evidence has been filed under his approval, and is identified there by his signature to the agreement; and in the record there it is identified just as the bill of exceptions says that it is; and thus the one hundred and eleven pages contain the evidence, oral and written, used on the trial, and all this the clerk has copied and sent up as part of the record pursuant to the order. Therefore, it is clear that we have here authenticated by the judge, all the evidence he had before the jury on the trial, and before himself on the motion.

It does not matter that it took more than one hundred and eleven pages by the clerk in copying.

Those one hundred and eleven pages were filed, and he

copied them. The evidence, therefore is sufficiently iden-
tified by the judge.

This case differs from 61 *Ga.*, 337, in this, that the
evidence is expressly approved here by the court in the
record, as well as referred to in the bill of exceptions.

It differs from 64 *Ga.*, 668 in this, that from the agree-
ment here it appears that copies, and not orignal office pa-
pers, such as interrogatories, indictments and warrants as
in that case, nor any original paper of any sort, were used
on the motion in this case; also, that the one hundred and
eleven pages ordered to be filed contained the copies
which were filed, and are sent up here as a part of the
record.

The duty of the clerk is to copy that which the judge
orders of file as the evidence on the trial; and this he
has done. All the oral evidence comes here copied by the
clerk as of file in his office; why not the documentary, if
ordered to be filed there, as part of the record?

Therefore, we think that all this evidence is referred to
in the bill of exceptions, and also authenticated by the
judge in the record, and is that which was used on the jury
trial and on the motion before him, and is certified by him
as so used.

Motion to dismiss denied.

CRAWFORD, Justice.

(On merits of case.)

In April, 1880, John D. Mitchell brought suit against
Cox & Gordon in the superior court of Dekalb county on
an open account, to which the defendant, Gordon, pleaded
the general issue and accord and satisfaction. The defend-
ant, Cox, filed no pleas. The plea of accord and satisfaction
filed by the defendant, Gordon, was based upon the fact
of a dissolution of the partnership, and in which it was
agreed between them that the liabilities of the concern
were to be paid by Cox, and that Cox afterwards entered

into certain contracts with the plaintiff, Mitchell, by which, in connection with the acts of Mitchell, he, Gordon, was discharged.

The jury on the trial of the issues returned a verdict for Mitchell, for the sum of $1,700.00 besides interest, and the defendant, Gordon, moved for a new trial, which was refused, and that refusal is alleged to be error.

The questions at issue between these parties on the motion for a new trial involve matters of fact as well as matters of law. It is insisted that the testimony does not authorize the verdict, and this makes it necessary for this court to examine the same, to see whether it is sufficient to warrant the jury in their finding. The record shows that the indebtedness set up was incurred wholly by the defendant, Cox, and that the defendant, Gordon, had no personal knowledge of the items charged, and therefore could give no sufficient testimony to rebut the positive testimony of the plaintiff, and thereby reduce the amount claimed.

The testimony of the plaintiff was that the items as set out in the bill of particulars, with the prices annexed thereto, were correct. That the delivery of the corn was made by his agent, McDowell, and that afterwards Cox and plaintiff got together and agreed that it was correct; and upon a failure by Cox to get the money to pay cash as he expected, it was agreed that the credit price thereof should be $1.35 per bushel.

That it was thus testified to several times during the examination, appears from the brief of the evidence; and so of the other items. The questions were varied, but the answers thereto were uniformly the same; that after the delivery of the articles, Cox and the plaintiff would get together, compare their memoranda of them and agree as to what had been received, and that this was done very soon after they were furnished.

There was one item of bacon of 1103 pounds, which was the subject of dispute between the counsel, because the sum

Gordon *vs.* Mitchell.

of $110.30, which was the amount due therefor, was deducted in the amount from the whole amount when it should have been added. This the plaintiff swears was the quantity gotten by the defendants, and never paid for, and of course should have been added.

The testimony of the plaintiff was supported by witness McPherson in that, whilst he was on the plantation of the defendant they got corn from the plaintiff. He further testified that he had charge of the feeding of the stock, and whenever the corn was out he would go to the plaintiff for more, and that they were getting corn there all the time. He also corroborated the plaintiff in the matter of the lumber and the wheelbarrows having been received and used by the defendants, as also to the cotton seed and syrup.

1. A motion was made to rule out the testimony of the plaintiff, Mitchell, because he did not know all the items to be correct of his own knowledge. This motion was overruled by the court, and this ruling is assigned as a ground of error in the motion for a new trial. Had this testimony stood by itself, the motion would have had merit in it, but when coupled with the further statement that he and the defendant, Cox, had compared the items and had agreed to their correctness, it was immaterial whether he had any personal knowledge thereof or not.

2. It is also insisted by counsel for plaintiff in error that if the verdict be correct for any amount, it is still too large by $200.00. This would be true if the jury believed that the $110.00 for the meat should be deducted, but being added to the $2,370.00, it makes the aggregate amount $2,480.00, and when the $760.00 is deducted, the balance remaining is $1,720,00, being $20.00 more than the verdict. So that there was no mistake if they believed the plaintiff as to the fact that the meat was to be charged instead of credited, as they must have done, or the verdict would have been as claimed by counsel for plaintiff in error.

A thorough examination of this testimony will show that if the jury believed the plaintiff and McPherson, although there was other testimony tending to weaken that of Mitchell, still they had sufficient proof to find their verdict, and enough to hold it as against its being set aside by the judge for the want of evidence to support it.

3. The pleas of accord and satisfaction rested mainly on the two following contracts made between the defendant, Cox, and the plaintiff, Mitchell, the same having been made by them after the dissolution of the partnership of Cox & Gordon. This dissolution provided that Cox, as agent of Gordon, was to take charge of the sixty convicts to be placed on Gordon's plantation and work them, treat them humanely, pay all the expenses, including the hire due the state, and after turning over fifty bales of cotton per annum to Gordon, he was to have what remained of the crops. The agency of Cox was to run for eight years, provided Cox complied with the agreement with Gordon, and the act of the legislature of eighteen hundred and seventy-six providing for the lease of the convicts. It was also further stipulated and agreed that Gordon was in no way to be held liable for the money used in making the crops. Dated August 13th, 1878.

"TAYLOR COUNTY, January 25th, 1879.

Contract entered into between J. D. Mitchell and Ed. Cox on the following condition : Ed. Cox, of the first part, agrees to let J. D. Mitchell have twenty convicts for the term of eight years on the following conditions: J. D. Mitchell is to take up a mortgage given by the said Cox to C. B. Howard and T. J. Marshall, amount of the mortgage I do not remember the precise amount, somewhere between seven hundred and forty dollars to seven hundred and sixty dollars; said mortgage due last December ; the said mortgage is to be held by Mitchell until the said twenty hands pay the above mentioned mortgage at the rate of thirty dollars each and all expenses, the mortgage then to be turned over to the said Cox in part payment for said hands, for the remainder of the term of eight years they are held in payment by the said J. D Mitchell for an account in full satisfaction of corn account held by J. D. Mitchell against Gordon & Cox. This " account " (contract) is to be in full settlement of account between Cox and Mitchell and Gor-

don.  If the lease should be abrogated or forfeited Mr. Mitchell is to receive in proportion " prior " (erasure) number of hands whatever may be gotten from damage from the state as per same rate per hand as I do.                        (Signed,)                  ED. COX,

                                                      J. D. MITCHELL."

          M. W. SAMS, JR.,
          G. T. MCDOWELL. •

" GEORGIA—Fulton County.

This agreement entered into this 29th day of March, 1879, between Edward Cox and J. D. Mitchell, both of the county of Taylor, in said state, witnesseth that the said Cox, in consideration of the said Mitchell's having this day surrendered up for cancellation a deed heretofore made him by said Cox to a house and lot in the town of Decatur, and having fully released and discharged said Cox from the payment of the sum of money mentioned in the deed as seven hundred and fifty dollars, which said deed was executed to secure, and in further consideration of the eventual cancellation and discharge of all indebtedness of Gordon & Cox to said Mitchell, provided the said Mitchell receives the hands as hereinafter provided, has this day sublet to said Mitchell, for the term of eight years from the first of April next, twenty-five out of sixty convicts that have fallen or may fall to said Cox, under his agreement with John B. Gordon, said twenty-five convicts to include the six now held by said Mitchell, the ten at Lathrop's and the four at Marshall's, and such other average hands as may be assigned to said Mitchell, the said Mitchell paying the expenses of getting such hands to his camp.  It is understood and agreed that said deed of Cox is surrendered and cancelled, and the indebtedness it was given to secure discharged instanter in any event ; but the indebtedness of Gordon & Cox is only to be discharged in proportion as the said Mitchell secures the twenty-five hands for said term provided his failure to secure their services is in no way attributable to any fault of his, and in the event of failure attributable to any fault of said Mitchell, that " indebted" too to be discharged.    It is further agreed that should said Mitchell have to pay off a note of Gordon & Cox to Swift & Son for five hundred and fifty dollars, then and in that event the mortgage which he held to secure him against liability on said note is not to be affected hereby.    It is further agreed that in the event said Lathrop and Marshall should refuse to deliver to the said Mitchell the convicts held by them, and in that event a number sufficient to make up twenty-five average hands shall be turned over to said Mitchell out of the sixty aforesaid that said Cox is entitled to.

And the said Mitchell is bound to pay the lease or lien to the state of said hands, and do all other acts that would be required of said

Cox to entitle him thereto, it being the true intent and meaning of this agreement that said Mitchell takes the place of said Cox as to said twenty-five hands, and releases said Cox from all liability for their care as well as from all personal individual liability by reason of any past contract between said Cox and said Mitchell. It is also understood and agreed, that as the time of any of said twenty-five hands expires, other hands are to be received in their stead from said sixty hands leased from said Gordon, so as to keep up the number to twenty-five during said term of eight years. It is also understood and agreed that said Mitchell assumes no liability of said Cox to said Gordon. It is further agreed that if the lease is abrogated from any cause not attributable to the fault or neglect of Mitchell, then and in that event the account of Mitchell against Gordon & Cox is to have full force and effect, any statute of legislation to the contrary notwithstanding. In witness whereof we have hereunto set our hands and seals the day and year first aforesaid.

Executed and delivered in presence of ) (Signed) EDWARD COX,
EDWARD C. THOMAS,                        }           J. D. MITCHELL."
W. S. THOMSON, N. P., Fulton Co.,Ga. )

The construction which the court placed upon these two contracts in his charge to the jury, constitutes the basis of the errors of law contained in the motion for a new trial.

He held the first to be an illegal and void contract, under which neither of the parties could take any rights, and so instructed the jury. Was this error?

It does not appear to us that there can be any two constructions of this contract, and that it was clearly a subletting of convicts by Cox to Mitchell, for the space of eight years, at the rate of thirty dollars each, and they were first to be held by Mitchell for the taking up of the mortgage made by Cox to C. B. Howard, and afterwards in full settlement of account of Mitchell against Cox & Gordon.

These convicts were held, as the proof shows, under the lease act of the general assembly of Georgia, and by the sixth section of which act it is made illegal to sublet or lease, or hire out said convicts, and if done by the lessees, or permitted to be done, the governor is to proceed to vacate the lease. The contract being forbidden by law, it

was without any force or legal effect, and was properly so ruled by the judge.

Upon the second contract he instructed the jury in sub stance, that it was not illegal on its face as was the other but when taken in connection with other testimony bearing upon it, they could then determine whether it was an accord and satisfaction and, as such, discharged the liability of the defendant, Gordon, or else illegal, as they believed the facts to be. If, on the 29th day of March, 1879, Mitchell in fact became the agent of one of the lessees, and took charge of the convicts, and was to work them on the defendant's, Gordon's, plantation under the lease and according to law, and subsequently defendant, Cox, made a contract by which he was thus to work them, the contract would be legal. But if at the time of the execution of the contract it was expected and contempla- ted between Cox and Mitchell that Mitchell was to take them off and carry them to his camp, and work them on his place, the same not being embraced in defendant's, Gordon's, place, but on Mitchell's, then neither party could claim any rights under such contract. He further instruct- ed them that if they found the facts to be such as to make the contract legal, then it would be necessary for them to inquire whether these convicts were lost to Mitchell by any fault of his own, for if they were lost for any other reason than the fault of Mitchell, then the contract was not to be in payment of the debt due by Cox & Gordon to him. If, therefore, Gordon came in and asserted any right he had as lessee, and sold such right to Howard, who with the aid of the principal keeper of the pen- itentiary, took from Mitchell these convicts, then their loss to Mitchell could not be considered as his fault, if he were working them where and as was contemplated and expected that they should be by Cox and himself when the contract was made.

We must confess that we see no error of law in this charge to the jury. And if Cox violated his contract with

Gordon, as agreed upon in their dissolution, and violated the law under and by which he was to work these con-victs, and Gordon thereupon asserted his rights as lessee, then, by re-possessing himself of the convicts held by Mitchell to pay in part the debt due him by Cox & Gordon, without the fault or consent of Mitchell, the pay-ment failed, and the firm of Cox & Gordon became liable by reason thereof to answer for their debt to him as though no payment had been attempted by the contract. The jury having found the facts to be. as appears by the verdict, that Mitchell held the convicts under an illegal contract made by Cox with him, and that Gordon resumed his control and authority over them, the payment failed and the debt stood unsatisfied against the firm, just as it did before the illegal bargain was made. To say that a debt due Mitchell from Cox & Gordon was to be paid by the labor of convicts for the space of eight years, who were taken away from him in the space of a few days, by one of the partners having the legal power to do so, would be to say that the contract was binding on Mitchell but not on Cox & Gordon.

4. The motion for a new trial was amended by adding two other grounds thereto of requests to charge, which were refused, and were substantially as follows:

(1.) That if the partnership between Cox & Gordon was dissolved, and Mitchell had notice thereof, and he then entered into a written contract with Cox upon addi-tional consideration and accepted other property from Cox in payment of the indebtedness of Cox & Gordon, such agreement would be a discharge of Gordon.

We find no testimony in the record which we think lays the foundation for such a charge; and it was therefore pro-perly refused.

(2.) That if prior to the commencement of this action the plaintiff instituted one in the county of Taylor, based on the contract of March 29th, 1879, between Cox & Mitchell, and Mitchell was still insisting upon a performance there-

of, that he would be estopped to deny the equity and binding force of the contract to avoid its legal effect.

The evidence discloses the fact to be that the plaintiff was not insisting in that court upon the performance of the contract; that it was not such a right as the court could enforce; and besides, there had never been any service upon the parties.

There was no error in the refusal.

5. Touching the exceptions taken on the hearing of the motion for a new trial, we hold that the right of the superior court to grant a new trial on terms is well settled in this court; and if the terms be not complied with, the verdict will stand.

With equal propriety, we think, the judge may propose terms, and on the refusal beforehand to accept them, he may refuse the grant. The only effect of such an offer is to show that he was not fully satisfied with the verdict, and to detract from the full force of the rule, that this court will not disturb a verdict as contrary to evidence, if it be approved by the presiding judge as sustained by the evidence, unless he has abused his discrefon in refusing it. In this case, however, the judge certifies, " that the mind of the court was not dissatisfied with the amount of the verdict in the technical or legal sense, so as to require a new trial under the rules of law."

With this statement explanatory of what he said to the defendant's counsel in overruling the motion for a new trial, puts this case within the reason affecting the usual judgments of refusal.

Judgment affirmed.